State v. VanDyke

STATE OF NORTH CAROLINA v. FLOYD GEROME VANDYKE

No. 755SC796

(Filed 3 March 1976)

1. Criminal Law § 66— motion for in-court lineup

The trial court in an armed robbery case did not err in the denial of defendant's motion for an in-court lineup to test the identifications by the State's witnesses and for an opportunity to present evidence upon his motion for a lineup.

2. Criminal Law § 66— in-court identification — pretrial lineup

In-court identifications of defendant by two State's witnesses were not tainted by a lineup identification of defendant by one witness

and an identification of defendant from a photograph of the lineup by the second witness where defendant's counsel was present for the lineup and participated in its arrangement, and no contention was made that officers made any suggestion to help the second witness identify defendant from the photographs, and where the court found from competent evidence that the identifications were based upon independent observations of defendant at the time of the robbery.

3. **Searches and Seizures § 2— consent to search by one claiming ownership — ownership actually in defendant**

An officer lawfully searched a zipper bag found in the trunk of a car in which defendant was riding as a passenger when he was arrested, and a shotgun found in the bag was properly admitted in defendant's trial for armed robbery, where defendant was arrested upon an unrelated felonious assault charge, the owner of the vehicle in which defendant was riding consented to a search of the vehicle, the owner opened the trunk, claimed ownership of the zipper bag and consented to a search of the bag, and when the bag was opened and the shotgun was in view, the vehicle owner then disclaimed ownership of the bag and said it belonged to defendant, since the officer only looked where he had reasonable grounds to believe he had a right to look and the contents of the bag were then in plain view.

4. **Arrest and Bail § 5— warrant issued — information over police radio — legality of arrest**

Arrest of defendant on a felonious assault charge was lawful where the arresting officers relied upon a police radio broadcast that a warrant had been issued for defendant's arrest on that charge, the warrant was immediately read to defendant when he was taken to the police station, and the affidavit and warrant were facially sufficient; therefore, items seized from defendant and lineup and photographic identifications were not the fruit of an illegal arrest.

5. **Arrest and Bail § 5— whereabouts of defendant — informers — reliability — legality of arrest**

Arrest of defendant upon information received by police radio that a warrant for defendant's arrest had been issued was not rendered unlawful by failure of the officer to show that informers who gave information as to defendant's whereabouts were reliable.

APPEAL by defendant from *Fountain, Judge.* Judgments entered 24 April 1975 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 23 January 1976.

Defendant was charged in four bills of indictment. Each charged him with the felony of armed robbery on or about 1 March 1975. One charged defendant with the armed robbery of the Holiday Inn in Wilmington, another with the armed robbery of one Pete Miranda (Miranda), another with the armed robbery of one Robert Mathis (Mathis), and the other with the armed robbery of one William R. Yates (Yates).

The State's evidence tends to show the following: During the early morning hours of 1 March 1975, David Franklin Smith (Smith) was on duty as desk clerk at the Holiday Inn (Inn) in Wilmington and was in the process of registering Mathis for a room when defendant entered the lobby of the Inn. Defendant brandished a sawed-off .410 gauge shotgun at Smith and Mathis. Defendant demanded the Inn's money. Smith emptied the cash drawer on the counter, and defendant took the money. Defendant then demanded and received the money from Mathis' wallet. About this time Miranda and Yates entered the Inn lobby. Defendant told Smith and Mathis to "keep cool" and turned the gun to point at Miranda and Yates. Defendant demanded and received the money from Miranda's and Yates' wallets, and then herded the four into a corner of the lobby. He forced them to lie on the floor and took a wristwatch from each of them. Defendant then threatened the four and left the lobby through the parking lot door.

On 8 March 1975 defendant was arrested on an unrelated felonious assault charge. At the time of his arrest defendant was a passenger in an automobile owned by one McCoy. After defendant was placed in the police car, McCoy consented to a search of his vehicle. McCoy opened the trunk and stated that the zipper bag (locally referred to as an AWOL bag) in the trunk was his. McCoy consented to a search of the bag. A dismantled, sawed-off .410 gauge shotgun was found in the bag. McCoy then disclaimed ownership and stated that the bag belonged to defendant. The shotgun was later identified before the jury as the same or similar to the one used in the robberies at the Inn on 1 March 1975. After defendant was taken to police headquarters and removed from the police car, the wristwatches taken from Smith and Yates were found on the rear floor of the police car where defendant had been sitting. While in the police station, the wristwatch taken from Mathis was removed from defendant's wrist.

Defendant offered no evidence.

The jury found defendant guilty as charged in each of the four indictments, and concurrent prison sentences were imposed.

*Attorney General Edmisten, by Assistant Attorney General George W. Boylan, for the State.*

*Loflin & Loflin, by Thomas F. Loflin III, for the defendant.*

BROCK, Chief Judge.

[1] When these cases were called for trial, and before pleading to the charges, defendant made a motion for an in-court lineup to test the identifications by the State's witnesses. The motion was denied, and defendant made a motion that he be allowed to put on evidence upon his motion for the lineup. This motion was likewise denied. Appellate counsel concedes that he can find no authority to support either motion but asks this Court to review trial counsel's exception to the ruling of the trial court. We can conceive of many reasons, which do not require discussion, why such motions were deemed specious and were properly overruled.

Because of the denial of the foregoing two motions, defendant moved for a continuance. This motion was denied. Appellate counsel concedes that he can find no error in the ruling of the trial judge but asks this Court to review trial counsel's exception to the ruling. It hardly need be said again that the motion for a continuance is addressed to the sound discretion of the trial judge. Defendant did not state any grounds for his motion other than the denial of the foregoing two motions. In our view the trial judge properly denied the motion to continue.

[2] Defendant assigns as error the admission of the in-court identifications of the defendant by the two State's witnesses, Smith and Mathis. Before these two witnesses were permitted to make an in-court identification, the trial judge conducted *voir dires*. The witness Smith was asked by the police to view a pretrial lineup. No suggestion of improper procedure is made. In fact defendant's trial counsel was present for the lineup and participated in its arrangement. Smith immediately identified defendant in the lineup. Later two photographs of the lineup were displayed to the State's witness Mathis. No contention is made that the officers made any suggestion to Mathis to help him identify defendant. Mathis immediately identified defendant in the photographs. Furthermore, the trial judge found from competent evidence that no impermissibly suggestive procedure was involved in either the lineup or the display of the photographs of the lineup. In addition the trial judge found from competent evidence that the identifications of the defendant by Smith and Mathis were based upon independent observations of the defendant at the time of the alleged robbery. These assignments of error are without merit and are overruled.

[3] Defendant argues that the evidence seized from McCoy's vehicle (the shotgun) should have been suppressed because the seizure was the fruit of an illegal search. Defendant was riding as a passenger in McCoy's vehicle at the time of his (defendant's) arrest. After defendant was arrested on an unrelated felonious assault charge and placed in a police vehicle, McCoy consented to a search. McCoy opened the trunk of his vehicle and claimed ownership of the zipper (AWOL) bag and consented that it could be searched. However, when the bag was opened and the shotgun was in view, McCoy disclaimed ownership and said the bag belonged to defendant. Also inside the zipper bag were personal belongings, personal clothes, letters, and military identification belonging to defendant. Defendant argues that because, in reality, the zipper (AWOL) bag and contents belonged to him, McCoy had no right to consent to the search, and therefore the search without a warrant was illegal.

The Constitution and the laws protect against unreasonable searches and seizures, and except for certain court imposed exclusionary rules, searches and seizures must be evaluated in the light of reasonableness under the circumstances. In this instance the owner of the vehicle in which the zipper bag was located consented to a search of his vehicle. When the owner opened the trunk of his vehicle, he claimed ownership of the zipper bag and consented to a search of the bag. Under these circumstances it was perfectly reasonable for the officer to believe that he was searching the bag with permission of its owner. It was only after the officer had viewed the contents of the bag that the owner of the vehicle disclaimed ownership of the bag and asserted that it belonged to defendant. The officer having already viewed the contents of the bag, a warrant for its search would have been of no avail. The warrant would have been based upon what the officer had already observed under circumstances that reasonably led him to believe he had the owner's permission to search. This is analogous to the plain view doctrine. The officer looked where he was led to believe he had a right to look, and the contents were in plain view. We also deem it the same as if the shotgun were lying unconcealed when the trunk was opened by the owner of the vehicle. To exclude the evidence of the contents of the bag as urged by defendant would be to sanction a tactic by which an accused and his associate could entrap an officer into a search by consent and then, by disclaimer of ownership by the associate, preclude the opportunity for a valid search warrant. Whether

defendant and his associate were cunning enough to plan such strategy is not the question, for the result is the same. We hold that the search of the zipper bag and the seizure of the contents were reasonable within the meaning of the Constitution and laws. This assignment of error is overruled.

Defendant argues that the shotgun, watches, and the lineup and photographic identifications should have been excluded from evidence because they are fruits of an illegal arrest.

Defendant was arrested on a felonious assault charge on 8 March 1975, some seven days after the robberies involved in this appeal. On 8 March 1975 one Margie Johnson and one Cynthia Johnson complained to the police that Floyd VanDyke had shot one James L. Genwright. The shooting took place during an argument between VanDyke, the defendant in this case, and the victim on Castle Street in Wilmington. The victim was placed in the hospital intensive care unit. Based upon statements given by the two complainants to Officer Chipps, he (Chipps) went before Magistrate R. T. Chestnut and obtained a warrant for the arrest of VanDyke for a felonious assault on James L. Genwright. Officer Chipps broadcast this information on the police radio along with the description given by the complainants. Officers Norris, Simpson, Kagel, and others in separate police vehicles received the broadcast of the charge against VanDyke and a description. During their search for VanDyke, the officers asked various persons if they knew of VanDyke's whereabouts. One source described the car in which VanDyke was riding and described the driver. As one of the officers was questioning another person, the vehicle in which VanDyke was riding passed by and the officer was advised VanDyke was in that vehicle. All of this information was broadcast on the police radio, and while one officer followed the VanDyke vehicle, three others responded. When the VanDyke vehicle stopped, four police vehicles converged on the scene, and VanDyke was placed under arrest on the felonious assault charge. After he was taken to the police station, the watches taken in the robbery were found as earlier described, and because VanDyke fit the description given by Smith after the robbery, VanDyke was also formally charged with the four robberies.

[4] Defendant argues that no arrest warrant for the felonious assault charge was shown to have been in existence, and therefore his arrest was without probable cause and therefore illegal.

State v. VanDyke

This argument completely ignores the State's evidence. Officer Norris identified State's exhibit No. 8 as the arrest warrant he obtained before reporting on the police radio that he held a warrant. The trial judge reviewed the affidavit and the warrant and determined that they were facially sufficient to justify execution and the arrest of defendant. Defendant does not challenge the sufficiency of the affidavit or the warrant. The officers arrested defendant in reliance upon the broadcast. When defendant was taken to the police station, the warrant was immediately read to him. This showing by the State makes out probable cause for defendant's arrest on the felonious assault charge. This assignment of error is overruled.

[5] Defendant further argues that his arrest on the felonious assault charge was without probable cause because the officers relied on informers to locate defendant. Defendant seems to argue that before an officer can inquire of an informer or some other person as to the whereabouts of an accused, the officer must first demonstrate that the information comes from a reliable source before the officer can use the information. VanDyke was not charged or arrested upon information from undisclosed sources. He was merely located by such information. When he was located, his description fit the description originally given by the two complainants and as broadcast on the police radio. Also he admitted his identity before he was actually arrested. To give credence to defendant's argument, an officer could never act upon information of the whereabouts of an accused without first going before a magistrate and demonstrating the reliability of such information. This argument is feckless.

We have reviewed defendant's remaining assignments of error, and they are overruled. When read in context, the charge as a whole fully and adequately apprised the jury of the law arising upon the evidence and of its duties under the law. In our opinion defendant received a fair trial free from prejudicial error.

No error.

Judges PARKER and ARNOLD concur.